```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION at LEXINGTON

UNITED STATES OF AMERICA,        )
                                 )
     Plaintiff,                  )   Criminal Action No. 06-20-JMH
                                 )
                                 )
v.                               )
                                 )
CHARLES L. ROSARIO,              )   MEMORANDUM OPINION AND ORDER
                                 )
                                 )
     Defendant.                  )
                                 )
```

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on Defendant Charles L. Rosario's ("Rosario") Motion to Suppress [Record No. 57], in which Rosario has requested that the Court suppress certain evidence obtained as a result of an investigation conducted on Rosario and his computer. The United States filed a response in opposition to the motion [Record No. 59], and the Court heard oral arguments on April 29, 2008. At the conclusion of that hearing, the undersigned announced that he would take the matter under advisement.

### I. FACTUAL ALLEGATIONS

Based upon the testimony provided at the hearing and the affidavits and attachments in the record, the Court finds the facts to be as set forth below.

At the time of the investigation, Rosario was on active duty, assigned to the Bluegrass Army Depot in Richmond, Kentucky. Rosario lived in Building 165 at the Bluegrass Army Depot where he was assigned a living area in a section of the soldier's barracks.

On August 28, 2004, Sergeant First Class ("SFC") Kaaba Jones was informed via telephone that a soldier who did not want to come forward believed that there was child pornography on Rosario's computer.[1] SFC Jones then contacted Captain George Downy about the anonymous tip. Captain Downy ordered SFC Jones to try and get statements from the soldier who had come forward with the tip. SFC Donald McNeil was also aware of the phone call accusing Rosario. SFCs McNeil, Jones and Staff Sergeant Booker Allen then summoned Specialist Devin Vallade, who was a computer network engineer, for the purpose of searching Rosario's computer.

Specialist Vallade accompanied McNeil, Jones, and Allen to Rosario's living area, and began searching Rosario's personal computer.[2] Specialist Vallade opened a folder, double clicked on several images, and displayed the images for the officers. The officers then notified Captain Downy regarding what their search had revealed. Rosario was not present during the search and no search warrant was obtained at that time.

---

[1] The first person to view the images was later revealed to be Specialist Antonio Bridges. Bridges was using Rosario's computer when he discovered child pornography. Bridges then notified a fellow soldier, Specialist Brian P. Wharton, who viewed the pictures and subsequently notified the chain of command.

[2] It appears from the record that prior to this search the officers and chain of command were at least aware that one of the individuals who had viewed the photos was Specialist Brian P. Wharton. It is not clear from the record whether Specialist Bridge's identity had been discovered at this point.

The next day, Captain Downy was ordered by Colonel Jacoby to seize Rosario's computer and his car keys and to restrict him to post. Captain Downy, along with First Sergeant John Haase, proceeded to Rosario's living area and seized his computer and several discs. Rosario was off duty and off base and thus not present at the time of this seizure. Shortly thereafter, SFC McNeil called Rosario via cell phone and ordered him to report to post. When Rosario arrived, he was ordered to report to Captain Downy's office where Captain Downy and First Sergeant Haase were waiting. Rosario was confronted with the charges against him, advised of his rights and asked by his superior officers to give a statement. After waiving his rights, Rosario told the officers that he had child porn on his computer and that he had accidentally downloaded it. He told the officers that he had meant to delete it, but had forgotten about it.

Two days later, on August 31, 2004, while still restricted to post, Rosario was approached and questioned by Special Agent Scott Miller of the United States Army Criminal Investigative Command. Rosario invoked his rights, and requested a lawyer. Approximately one hour later, Special Agent Miller again approached Rosario, again advised him that an inquiry was being conducted regarding possession of child pornography, advised him of his right to refuse a search of his person, premises or property, and asked if he would give consent to search his person, premises and property. Rosario

3

granted that consent. Then, in Rosario's presence, Special Agent Miller conducted searches of Rosario's vehicle and living area. During the course of these searches, Rosario made the statement that child pornography was located on his computer but he did not have any knowledge as to how it got there. Special Agent Miller characterized this statement as being a "spontaneous comment." Special Agent Miller obtained from Captain Downy the computer and discs that Captain Downy and ISG Haase had previously seized from Rosario's living area.

The next day, September 1, 2004, Special Agent Miller received a memorandum from Captain Travis Hall, an attorney who had been appointed to represent Rosario. In the memorandum, Captain Hall revoked Rosario's consent to search, including a refusal of consent for any person to search Rosario's computer and directives that no discussion may be had with Rosario without contacting counsel.

On September 30, 2004, Military Magistrate Kevin T. Lonergan issued a Search and Seizure Authorization for all of the property received from Rosario. The Authorization was issued based on an Affidavit prepared by Special Agent Miller. Based on the Search and Seizure Authorization, Rosario's computer and personal items were searched and analyzed by the United States Army Criminal Investigation Laboratory in Forrest Park, Georgia.

## II. ANALYSIS

The Fourth Amendment guarantees "the right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Constitutional protections, including protections against unreasonable searches and seizures, apply to members of the active military just as they do to any other citizen. *Burns v. Wilson*, 346 U.S. 137, 142 (1953).

### A. THE WARRANTLESS SEARCH

Rosario contends that when Sergeants McNeil, Jones, and Allen along with Specialist Vallade, conducted the initial warrantless search of Rosario's personal computer in his living area, the search was unreasonable, unconstitutional, and the fruits of that search must be suppressed.

In order to challenge a search as a violation of the Fourth Amendment, this Court must decide whether Rosario had "an expectation of privacy in the place searched, and whether that expectation was reasonable." *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000)(citing *Minnesota v. Carter*, 525 U.S. 83 (1998)). A defendant must satisfy a two-pronged test to show a legitimate expectation of privacy: 1) he must manifest an actual, subjective expectation of privacy; and 2) that expectation must be one that society is prepared to recognize as legitimate. *Id*. The ultimate question is whether Rosario's claim to privacy from the government intrusion is reasonable in light of all the surrounding circumstances. *United States v. Barrows*, 481 F.3d 1246, 1248 (10th

5

Cir. 2007).

The Court finds that the search did not violate Rosario's Fourth Amendment protections because he did not have a reasonable expectation of privacy in his computer. Rosario connected his computer to a network through which the files on the computer were accessible by other computers on the same network. Furthermore, Rosario admitted that he left his computer on all the time and allowed numerous individuals access to it. Additionally, there was no password on Rosario's computer at the time the search was conducted. Rosario took no steps to prevent others from accessing the files on his computer and surely contemplated that someone could access files on his computer either through the network or by using the computer with his permission. *See Id.* Consequently, the Court finds that Rosario did not have a subjective expectation of privacy in his computer. Even if the Court were to conclude that Rosario had an expectation of privacy, by connecting his computer to a network and allowing others to use it, that expectation was unreasonable.

Though it has not been argued by the parties it is worth noting that Rosario's expectation of privacy in his living space was also diminished by the fact that he lived in army barracks. *See United States v. McCarthy*, 38 M.J. 398 (CMA 1993)(holding that the threshold of a barracks/dormitory room does not provide the same sanctuary as the threshold of a private home). Rosario's living

area, where the computer was searched, was located in a long open room. Other soldiers' bunks and living areas were separated from Rosario's by furniture. The expectations of privacy in a setting such as this differ from those in a home. What is an unreasonable intrusion in a civilian context may be reasonable in a military context. *Id*. Thus, the Court finds that Sergeants McNeil, Jones, Allen and Specialist Vallade did not violate Rosario's Fourth Amendment protections when they entered his living space to search his computer.

### B. THE WARRANTLESS SEIZURE

Rosario next claims that the seizure of his computer without a warrant was unreasonable and violative of the Fourth Amendment. However, to demonstrate a search or seizure is unreasonable, and thus a violation of the Fourth Amendment, a defendant must prove he had "a legitimate expectation of privacy in the place searched or the *item seized*." *United States v. King* 227 F.3d 732, 743 (6th Cir. 2000)(emphasis added)(citations omitted). Thus, as the Court has concluded that Rosario had no expectation of privacy in the files on his computer, this argument fails.

Furthermore, the seizure of the computer without a warrant was also valid under the "plain view" doctrine. The plain view doctrine permits the warrantless seizure of private possessions where four essential requirements are met: (1) the object must be in plain view; (2) the officer must be legally present in the place

from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have right of access to the object. *Horton v. California*, 496 U.S. 128, 136-37 (1990).  The first and second prongs are satisfied because Rosario's computer was in his living area in the barracks and Captain Downy and First Sergeant Haase were allowed to enter that area.

The third prong requires the Court to determine whether it was "immediately apparent" to the officers that Rosario's computer hard drive or the discs seized contained evidence of child pornography. The Supreme Court has held that the "immediately apparent" component of the plain view doctrine requires only that the officers have probable cause to believe that the object they are viewing is contraband or evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 741-42 (1983).  Here, the officers had probable cause to believe that Rosario's computer hard drive and CD-Rom discs contained child pornography.  At the time of the seizure, Captain Downey had received reports that six individuals had viewed photos of what appeared to be child pornography on Rosario's computer. This is enough to establish probable cause that Rosario's computer contained contraband images of child pornography.

The final factor for the "plain view" exception requires that the officer have a lawful right of access to the object at issue. This requirement of a lawful right of access means that generally

8

an officer should get a warrant if possible before he seizes an item in plain view. *United States v. McLevain*, 310 F.3d 434, 443 (6th Cir. 2002)(citing *Horton*, 496 U.S. at 137, fn. 7). If the officer could obtain a warrant, then the "plain view" exception for the evidence cannot be used. *Id*. In this case, the seizure of Rosario's computer was sufficiently justified under the exigent circumstances. The images or data stored on Rosario's computer and discs which were suspected to contain child pornography may have easily been deleted, damaged, or overwritten to the point that they were unrecoverable. The risk of the disappearance of the photos on the computer clearly outweighs Rosario's privacy interest. Accordingly, the seizure of Rosario's computer hard drive and the discs did not violate his Fourth Amendment rights.

Even if the Court were to assume that a Fourth Amendment violation had taken place, the computer inevitably would have been discovered through lawful means. *U.S. v. Garcia,* 496 F.3d 495, 505 (6th Cir. 2007)("The inevitable discovery doctrine is an exception to the exclusionary rule which 'allows unlawfully obtained evidence to be admitted at trial if the government can [show]...that the evidence inevitably would have been acquired through lawful means.'"(quoting *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995). The affidavit used to obtain the search warrant for Rosario's computer contained no information that was gained from the seizure of the computer. There is nothing in the record that

9

shows that the computer was ever searched after its seizure and before the time the search warrant was issued. Accordingly, even if the Court were to find that the seizure was unreasonable, inevitably the computer would have been seized from Rosario.

### C. ROSARIO'S STATEMENT

Rosario argues that after he was ordered to return to base and informed of the charges against him, he was interrogated and gave an incriminating statement. It is Rosario's argument that there was no intervening event between the Fourth Amendment violation and the obtaining of the incriminating statement, and thus the statement must be suppressed. *Oregon v. Elstad*, 470 U.S. 298, 306 (1985)(When an incriminating statement is obtained as a result of a Fourth Amendment violation, that statement is said to be tainted, and is deemed to be "fruit of the poisonous tree."). However, this argument fails, as the Court has found that was no Fourth Amendment violation.

Rosario also argues that the statement must be suppressed because it was involuntary. Rosario claims that the inherently coercive setting of a soldier being questioned by superior military officers without being allowed to first consult with an attorney renders the statements involuntary. This argument also fails. There is no indication anywhere that Rosario did not understand his rights or that his statement was not the product of a free and rational choice. Rosario was given his *Miranda* rights and executed

10

a written waiver of those rights prior to any questioning. As part of this waiver, the defendant answered "no" to a question asking if he wanted a lawyer at this time and "yes" to a question asking if he was willing to discuss the offenses under investigation and make a statement without talking to a lawyer and without having a lawyer present. Despite the fact that the setting in which the statement was taken may have had coercive aspects to it, that does not make the statement involuntary. *See United States v. Salvo,* 133 F.3d 943, 948 (6th Cir. 1998); *see also New York v. Quarles*, 467 U.S. 649, 654 (1984). The Court finds that the statement, which was given after adequate *Miranda* warnings, should not be suppressed.

### D.  STATEMENTS TO SPECIAL AGENT MILLER

Next, Rosario alleges that the statements and consent to search that he gave to Special Agent Miller should be suppressed. Rosario contends that one hour after invoking his right to counsel, Special Agent Miller came back to Rosario, re-advised him of his rights, asked him to consent to searches, asked him questions about the nature and location of his property, and had him accompany him during those searches. Rosario claims that these questions and actions amounted to an interrogation and as a result he consented to searches and gave additional incriminating statements. Rosario argues that after an accused has expressed his desire to obtain counsel, he cannot be further interrogated unless the accused himself initiates the communication. *Solem v. Stumes*, 465 U.S. 638,

11

646 (1984); *Edwards v. Arizona*, 451 U.S. 477, 484-86 (1981). Rosario argues that all of the evidence obtained by Special Agent Miller during the course of this interrogation must be suppressed.

The protections of the Fifth Amendment only apply to incriminating evidence of a testimonial or communicative nature. *See Schmerber v. California*, 384 U.S. 757, 760-61 (1966). Determining whether police conduct constitutes an interrogation requires looking at the defendant's perception of the police conduct and the reasonable likelihood that such conduct would elicit an inculpatory response. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Courts have found that consenting to a search is not an incriminating statement under the Fifth Amendment because the consent is not evidence of a testimonial or communicative nature. *United States v. Cooney*, 26 Fed. Appx. 513, 523 (6th Cir. 2002)(unpublished)(collecting cases)*see also United States v. Bustamante*, 493 F.3d 879, 892 (7th Cir. 2007)(holding that "though all interrogation must cease once a defendant in custody has invoked his right to counsel, a request to search a vehicle or home is not likely to elicit an incriminating response and is therefore not interrogation."). Therefore, the consent to search and any evidence obtained as a result should not be suppressed.

The Court also finds that the incriminating statement Rosario made to Special Agent Miller should not be suppressed as there is nothing to indicate that it was made in response to any

12

questioning. *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir. 1991)("Voluntary and spontaneous comments by an accused, even after Miranda rights are asserted, are admissible evidence if the comments were not made in response to government questioning."). Special Agent Miller stated in his investigation report that Rosario made a "spontaneous comment." No evidence has been presented that refutes that contention.

### III.   CONCLUSION

Because the Court has found that there have been no violations of the Fourth Amendment or Rosario's *Miranda* rights it is not necessary to redact any of portion of the search warrant affidavit. The search warrant and the evidence obtained pursuant to that warrant should not be suppressed.

Accordingly, **IT IS ORDERED** that the Motion to Suppress Evidence [Record No. 57] shall be, and the same hereby is, **DENIED**.

This the 8th day of May, 2008.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge